**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

RENDELL ROBINSON,

                                Plaintiff,

      - v -                                       Civ. No. 9:16-CV-0285
                                                        (BKS/DJS)

JAMES TAYLOR, *et al.*,

                                Defendants.

**APPEARANCES:**                                 **OF COUNSEL:**

RENDELL ROBINSON
Plaintiff, *Pro Se*
07-A-6175
Five Points Correctional Facility
Caller Box 119
Romulus, New York 14541

HON. ERIC T. SCHNEIDERMAN                RICHARD LOMBARDO, ESQ.
Attorney General of the State of New York       Assistant Attorney General
Attorney for Defendant
The Capitol
Albany, New York 12224

**DANIEL J. STEWART**
**United States Magistrate Judge**

# REPORT-RECOMMENDATION and ORDER

*Pro se* Plaintiff Rendell Robinson commenced this civil rights action, pursuant to 42 U.S.C. § 1983, asserting claims arising from his incarceration at Great Meadow Correctional Facility ("Great Meadow") in the custody of the Department of Corrections and Community Supervision ("DOCCS"). Dkt. No. 1, Compl. Presently before the Court is Defendants' Motion, brought pursuant to FED. R. CIV. P. 12(c), to dismiss Plaintiff's Eighth Amendment medical indifference claims against Defendants Kimberly Lipka, Ted Nesmith, David Karandy, Raymond Maddocks,

Kalyana Battu, and Leon Renaud.[1]  Dkt. No. 37, Defs.' Mot. Dismiss.  Plaintiff elected not to respond to Defendants' Motion.  Dkt. No. 40.  For the reasons that follow, the Court recommends that Defendants' Motion be **granted in part and denied in part**.

## I. STANDARD OF REVIEW

"The standard for granting a [FED. R. CIV. P.] 12(c) motion for judgment on the pleadings is identical to that of a [FED. R. CIV. P.] 12(b)(6) motion for failure to state a claim."  *Patel v. Contemporary Classics of Beverly Hills*, 259 F.3d 123, 126 (2d Cir. 2001).

On a motion to dismiss, the allegations of the complaint must be accepted as true.  *See Cruz v. Beto*, 405 U.S. 319, 322 (1972).  The trial court's function "is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof."  *Geisler v. Petrocelli*, 616 F.2d 636, 639 (2d Cir. 1980).  "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."  *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974) (*overruled on other grounds by Davis v. Scherer*, 468 U.S. 183 (1984)).

The court is bound to give the plaintiff the benefit of every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint.  *See Retail Clerks Int'l Ass'n, Local 1625, AFL-CIO v. Schermerhorn*, 373 U.S. 746, 754  (1963).  Nevertheless, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Therefore, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id*. (citation omitted).

---

[1] Defendants Ted Nesmith, Raymond Maddocks, and Kalyana Battu are listed on the docket as "Fischer Nesmith," "Haddocks," and "K. Rattu."  Based upon Defendants' Answer, however, these Defendants correct names are Ted Nesmith, Maddocks, and Battu, and they will be referred to as such.  *See* Dkt. No. 36.  The Clerk of the Court is directed to amend the caption accordingly.

A motion to dismiss pursuant to Rule 12(b)(6) may not be granted so long as the plaintiff's complaint includes "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. at 697 (citing *Twombly*). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. at 678. This plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. In this respect, to survive dismissal, a plaintiff "must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'" *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 440 U.S. at 555). Thus, in spite of the deference the court is bound to give to the plaintiff's allegations, it is not proper for the court to assume that "the [plaintiff] can prove facts [which he or she] has not alleged, or that the defendants have violated the . . . laws in ways that have not been alleged." *Assoc. Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters,* 459 U.S. 519, 526 (1983). The process of determining whether a plaintiff has "nudged [his] claims . . . across the line from conceivable to plausible," entails a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. at 679-80.

Where, as here, the complaint was filed *pro se*, it must be construed liberally with "special solicitude" and interpreted to raise the strongest claims that it suggests. *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011). Nonetheless, a *pro se* complaint must state a plausible claim for relief. *See Harris v. Mills*, 572 F.3d 66, 73 (2d Cir. 2009).

"Generally, in determining a 12(b)(6) motion, the court may only consider those matters

alleged in the complaint, documents attached to the complaint, . . . matters to which the court may take judicial notice[,]" as well as documents incorporated by reference in the complaint. *Spence v. Senkowski*, 1997 WL 394667, at *2 (N.D.N.Y. July 3, 1997) (citing *Kramer v. Time Warner Inc.*, 937 F.2d 767, 773 (2d Cir. 1991)); *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991) (citing FED. R. CIV. P. 10(c)).

## II. SUMMARY OF THE COMPLAINT

The Court here summarizes, and in accordance with the applicable standard accepts as true, only those allegations contained in the Complaint that are relevant to the determination of Defendants' Motion. For a more complete summary of Plaintiff's factual allegations, the Court refers to the Complaint, as well as the initial screening in this action, conducted pursuant to 28 U.S.C. §§ 1915(e) and 1915A by the Honorable Gary L. Sharpe, Senior United States District Judge. Compl.; Dkt. No. 7, Dec. & Order, dated May 20, 2016, at pp. 4-10.

Plaintiff has been diagnosed with post-traumatic stress disorder, depression, and anti-social personality disorder, and receives psychotropic drugs. Compl. at ¶ 36.[2] On March 12, 2013, Plaintiff was housed in the long-term keeplock unit at Great Meadow. *Id.* at ¶¶ 25-27. When the mental health nurse came to his cell to give him his daily medication, Plaintiff told her that "he felt like killing himself." *Id.* at ¶ 38. Defendant Correction Officer ("C.O.") St. John, who was escorting the nurse, told Plaintiff that he was going to be moved to an observation ("OBS") cell for suicide watch. *Id.* Plaintiff then explained that he was only playing and that he did not want to kill himself. *Id.* at ¶ 39.

---

[2] Plaintiff's Complaint is filed on the Court's Case Management Electronic Case Files ("CM/ECF") System in two parts at Dkt. No. 1 and Dkt. No. 1-1. The Court will cite to the Complaint's paragraph numbers, which continue consecutively throughout the two parts.

Shortly thereafter, a number of correction officers arrived at Plaintiff's cell to escort him to an OBS cell. *Id.* at ¶¶ 45-46. While he was being escorted to the OBS cell, the correction officers assaulted Plaintiff by dragging and slamming him on the ground, striking him with closed fists, slamming his face into a fence, choking him, and twisting his hands and feet. *Id.* at ¶¶ 53-54, 59-60, & 63-65.

Following the assault, Plaintiff was taken to the facility infirmary, where he was examined by Defendant Nesmith, a physician's assistant ("P.A."). *Id.* at ¶¶ 66-67. Plaintiff sustained the following injuries in the assault: head trauma, including contusions and chronic migraines; a "closed left eye" and "chronic eyeball pain"; pain and loss of hearing in his left ear; neck pain and cramps; right shoulder and arm pain; back pain and muscle spasms; lacerations and bruise marks; left leg pain; and a swollen left ankle and foot. *Id.* at ¶ 68. Nesmith failed to document any of Plaintiff's injuries in his medical records and failed to provide any treatment. *Id.* at ¶ 67.

Plaintiff was taken from the infirmary to the Special Housing Unit ("SHU"), where he again indicated that he was feeling suicidal. *Id.* at ¶ 69. Plaintiff was then taken to an OBS cell, where he stayed for the next eight days until March 20, 2013. *Id.* at ¶¶ 70 & 105. During that period, Defendants C.O. Therrian and C.O. Renaud denied Plaintiff any food, as well as access to showers and mental health treatment. *See id.* at ¶¶ 81 & 105. Therrian and Renaud also made false log book entries indicating that Plaintiff was refusing meals and mental health treatment. *Id.* at ¶ 91.

On March 13 or 14, 2013, Plaintiff spoke with Defendant Battu, a psychiatrist, *id.* at ¶ 21, regarding the assault by correctional staff and the emotional distress he was experiencing. *Id.* at ¶ 82. Plaintiff told Dr. Battu that he would attempt suicide if he was returned to SHU. *Id.* at ¶ 84. Dr. Battu told Plaintiff to file a grievance complaint on his allegations against correctional staff and

ordered him to be discharged from the Mental Health Unit for suicide watch and returned to SHU. *Id.* at ¶ 87. Plaintiff was escorted to SHU, but was returned to the Mental Health Unit when he indicated signs of suicidal behavior on the SHU screening questionnaire. *Id.* at ¶ 89.

On March 13, 2014, Plaintiff was seen by Defendants Nurse Lipka and P.A. Nesmith for pain in his head, ear, eye, face, neck, legs, and foot. *Id.* at ¶ 158-59. Lipka and Nesmith refused to give Plaintiff ice or ibuprofen, or to have x-rays taken. *Id.* at ¶ 159-60. On March 15, 2013, Plaintiff was seen by Defendant Dr. Maddocks, who also refused to provide pain medication or order x-rays, in spite of Plaintiff's complaints of pain. *Id.* at ¶¶ 160-61.

On March 19, 2013, Dr. Battu again discharged Plaintiff from the Mental Health Unit, although he did not even meet with Plaintiff. *Id.* at ¶ 95. Plaintiff, however, again did not pass the SHU suicide prevention screening and was returned to the Mental Health Unit. *Id.* at ¶ 96. The evening of March 19, Plaintiff began to feel weak from not having eaten for seven days, and his legs buckled and he fell to the floor. *Id.* at ¶ 98. Plaintiff's legs and arms felt numb and he was lightheaded. *Id.* at ¶¶ 99 & 101. Defendants Renaud and Sergeant W. observed Plaintiff lying on floor and asked him what happened. *Id.* at ¶¶ 100-01. Plaintiff requested medical attention, but the Defendants ignored his request. *Id.* at ¶ 102.

On March 20, 2013, Plaintiff was seen by Dr. Battu, and he continued to express that he was experiencing suicidal thoughts. *Id.* at ¶¶ 106 & 115. Plaintiff requested that he be placed in mental health program where he would receive mental health treatment, and Dr. Battu said that he would discuss that request with Plaintiff's treatment team. *Id.* at ¶¶ 116-17. As Plaintiff was walking back to his OBS cell, his legs again buckled and he fell to the floor. *Id.* at ¶ 118. Defendants Lieutenant John Doe and Sergeant W., who were escorting Plaintiff, did not notify medical staff that Plaintiff

had fallen, but instead dragged him on the floor back to his OBS cell, causing injuries to his head, legs, feet, and shoulder. *Id.* at ¶¶ 121-22.

On March 20, 2013, Dr. Battu ordered Plaintiff to be discharged from the Mental Health Unit. *Id.* at ¶ 125. Plaintiff was escorted in a wheelchair to the SHU intake room, where he again indicated during the screening process that he would kill himself if he was admitted to SHU. *Id.* at ¶¶ 127-28. A nurse then conducted a medical examination. *Id.* at ¶ 129. Despite being notified that Plaintiff was suffering from numerous injuries, had not had any food for eight days straight, and was unable to ambulate, Defendant Dr. Karanady, the Health Services Director at Great Meadow, *id.* at ¶ 133, cleared Plaintiff to be admitted to the SHU instead of ordering Plaintiff to be brought to the infirmary. *Id.* at ¶¶ 134-35.

Plaintiff was taken from the intake room to a SHU cell. *Id.* at ¶ 139. Approximately ten minutes later, Plaintiff attempted suicide and was found hanging from a sheet in his cell. *Id.* at ¶ 146. Plaintiff was cut down and taken on a stretcher to the infirmary emergency room where he was seen by Defendants Dr. Karandy and Nurse Lipka. *Id.* at ¶¶ 140-42. Plaintiff repeated his complaints of neck, eye, facial, back, and foot pain, and reported the two incidents where his legs had given out. *Id.* at ¶¶143-44. Dr. Karandy directed Plaintiff to walk to the x-ray room, but Plaintiff explained that he was unable to walk due to numbness in his legs and requested a wheel chair. *Id.* at ¶¶ 145-46. Dr. Karandy responded that Plaintiff would only get x-rays if he walked to the x-ray room, despite Plaintiff's complaints of leg numbness and the fact that Plaintiff's legs were shackled. *Id.* at ¶¶ 147-48. Plaintiff attempted to walk to the x-ray room, but Dr. Karandy falsely recorded that Plaintiff was being uncooperative and had refused x-rays. *Id.* at ¶¶ 152-53. Plaintiff also requested ibuprofen and ice, but the Defendants denied that request. *Id.* at ¶¶ 150-51. Plaintiff

was discharged from the infirmary without receiving any medical treatment. *Id.* at ¶ 154.

Plaintiff was admitted to the Mental Health Unit for five more days. *Id.* at ¶¶ 155-56. He did not see Dr. Battu during this period because Defendant Therrian falsely reported that he would not come out of his cell. *Id.* at ¶ 156.

On March 27, 2013, Plaintiff received an inmate misbehavior report, charging Plaintiff with multiple counts of misconduct during the March 12, 2013 incident. *Id.* at ¶ 162. Following a Tier III Disciplinary Hearing, *id.* at ¶ 163, Plaintiff was found guilty of certain of the charges and sentenced to six months confinement in SHU, six months loss of privileges, six months loss of good time credits. *Id.* at ¶ 174.

The following claims survived the initial screening conducted by Judge Sharpe: (1) Eighth Amendment excessive force and/or failure to protect claims against Defendants Taylor, St. John, Prieur, Lashinsky, and Goodman;[3] (2) Eighth Amendment medical indifference claims against Defendants Lipka, Nesmith, Karandy, Maddocks, Battu, and Renaud;[4] (3) Fourteenth Amendment due process claim against Defendant Quinn; and (4) Eighth Amendment conditions-of-confinement claims against Defendants Therrian and Renaud. Dec. & Order, dated May 20, 2016, at p. 22.

## III. DISCUSSION

Defendants Lipka, Nesmith, Karandy, Maddocks, Battu, and Renaud move to dismiss Plaintiff's Eighth Amendment medical indifference claims for failure to state a claim upon which relief can be granted. Alternatively, Defendants argue that they are entitled to qualified immunity

---

[3] Plaintiff's Eighth Amendment excessive force claims against Defendants Lieutenant John Doe and Sergeant W. also survived initial review. Dec. & Order, dated May 20, 2016, at p. 22.

[4] Plaintiff's Eighth Amendment medical indifference claims against Defendants Lieutenant John Doe, Sergeant W., and John Doe (Area Supervisor for Great Meadow SHU) also survived initial review. Dec. & Order, dated May 20, 2016, at p. 22.

from Plaintiff's medical indifference claims.

### A. Legal Standard

To state an Eighth Amendment claim for denial of adequate medical care, a prisoner must demonstrate that prison officials acted with "deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). "[T]he plaintiff must allege conduct that is 'repugnant to the conscience of mankind' or 'incompatible with the evolving standards of decency that mark the progress of a maturing society.'" *Ross v. Kelly*, 784 F. Supp. 35, 44 (W.D.N.Y.), *aff'd*, 970 F.2d 896 (2d Cir. 1992) (quoting *Estelle v. Gamble*, 429 U.S. at 102, 105-06). To state a claim for denial of medical care, a prisoner must demonstrate (1) a serious medical condition and (2) deliberate indifference. *Farmer v. Brennan*, 511 U.S. 825, 834-35 (1994); *Hathaway v. Coughlin ("Hathaway I")*, 37 F.3d 63, 66 (2d Cir. 1994).

The first prong is an objective standard and considers whether the medical condition is "sufficiently serious." *Farmer v. Brennan*, 511 U.S. at 834 (quoting *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)). A court must consider two inquiries in determining whether a deprivation of care is sufficiently serious. *Salahuddin v. Goord*, 467 F.3d 263, 279 (2d Cir. 2006). First, the court must determine "whether the prisoner was actually deprived of adequate medical care." *Id.* Medical care is adequate where the care provided is a "reasonable" response to the inmate's medical condition. *Id.* The second inquiry is "whether the inadequacy in medical care is sufficiently serious." *Id.* at 280. In cases where there is a failure to provide any treatment, the court examines whether the inmate's medical condition is sufficiently serious. *Smith v. Carpenter*, 316 F.3d 178, 185-86 (2d Cir. 2003). The Second Circuit has stated that a medical need is serious if it presents "a condition of urgency that may result in degeneration or extreme pain." *Chance v. Armstrong*, 143 F.3d 698,

702 (2d Cir. 1998) (internal quotation marks and citation omitted). Among the relevant factors to consider are "[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Id.* (quoting *McGuckin v. Smith*, 974 F.2d 1050, 1059-60 (9th Cir. 1992)). In cases where medical treatment is given, but is inadequate, "the seriousness inquiry is narrower." *Salahuddin v. Goord*, 467 F.3d at 280. "For example, if the prisoner is receiving on-going treatment and the offending conduct is an unreasonable delay or interruption in that treatment, the seriousness inquiry 'focus[es] on the challenged delay or interruption in treatment rather than the prisoner's underlying medical condition alone.'" *Id.* (quoting *Smith v. Carpenter*, 316 F.3d at 185).

The second prong is a subjective standard requiring a plaintiff to demonstrate that the defendant acted with the requisite culpable mental state similar to that of criminal recklessness. *Wilson v. Seiter*, 501 U.S. at 301-03; *Hathaway I*, 37 F.3d at 66. A plaintiff must demonstrate that the defendant acted with reckless disregard to a known substantial risk of harm. *Farmer v. Brennan*, 511 U.S. at 836. This requires "something more than mere negligence . . . [but] something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* at 835; *see also Weyant v. Okst*, 101 F.3d 845, 856 (2d Cir. 1996) (citing *Farmer v. Brennan*, 511 U.S. at 835). Further, a showing of medical malpractice is insufficient to support an Eighth Amendment claim unless "the malpractice involves culpable recklessness, i.e., an act or a failure to act by the prison doctor that evinces 'a conscious disregard of a substantial risk of serious harm.'" *Chance v. Armstrong*, 143 F.3d at 702 (quoting *Hathaway v. Coughlin ("Hathaway II")*, 99 F.3d 550, 553 (2d Cir. 1996)); *see also Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003) (citations

omitted).

### B. Analysis

#### 1. *Defendants Lipka, Nesmith, Karandy, and Maddocks*

Liberally construing the Complaint, Plaintiff asserts that Defendants Lipka, Nesmith, Karandy, and Maddocks violated his Eighth Amendment rights by denying him any medical treatment for the injuries he incurred in the March 12, 2013 incident. The Defendants argue that Plaintiff has failed to allege an objectively serious condition or that any of them failed to act with sufficiently culpable state of mind. Dkt. No. 37-1, Defs.' Mem. of Law at pp. 6-9.

At the objective prong, Plaintiff alleges a number of injuries that he suffered during the alleged March 12 assault. *See* Compl. at ¶ 68. These include migraines; pain in his eyes, neck, shoulder, back, arm, and leg; a closed left eye; pain and loss of hearing in his left ear; lacerations, bruising, and contusions. *Id.* Defendants argue that even if Plaintiff did suffer from these conditions, they would not amount to an objectively serious medical condition. Defs.' Mem. of Law at pp. 6-7. While Defendants are correct that courts have found that conditions such as cuts, bruises, and scrapes do not constitute a sufficiently serious medical condition, *see, e.g.*, *Dallio v. Herbert*, 678 F. Supp. 2d 35, 44-45 (N.D.N.Y. July 28, 2009), construing Plaintiff's allegations liberally, he suffered more than cuts and bruises in the assault. Among his allegations, Plaintiff alleges that his left eye was swollen closed, and that he had ringing and loss of hearing in his left ear. Compl. at ¶ 68. Plaintiff further alleges that he had "chronic" pain in his eye, neck, shoulder, back, arm, and leg. *Id.* Although Plaintiff's allegations are vague and lack detail, viewing them in the most favorable light, the combination of Plaintiff's alleged symptoms is sufficient at this stage to plead the objective prong of an Eighth Amendment claim. *See, e.g.*, *Ellis v. Guarino*, 2004 WL 1879834, at *11

(S.D.N.Y. Aug. 24, 2004) (finding that allegations of, *inter alia*, blurred vision and dizziness and ringing in ears were sufficient to plead a serious medical condition).

Next, under the subjective prong, Defendants argue that Plaintiff has failed to allege that Defendants Lipka, Nesmith, Karandy, or Maddocks acted with a sufficiently culpable state of mind. Defs.' Mem. of Law at pp. 7-9. As to each of these Defendants, however, Plaintiff has alleged that they refused to provide him with any medical treatment after he informed them of his injuries. *See* Compl. at ¶¶ 134-35, 144-47, 151, & 159-61. "Deliberate indifference . . . is properly pleaded by allegations . . . of 'complete denial' of medical treatment." *Harding v. Kuhlmann*, 588 F. Supp. 1315, 1316 (S.D.N.Y. 1984).

As stated above, Defendants also argue that they are entitled to qualified immunity from Plaintiff's medical indifference claims. Defs.' Mem. of Law at pp. 13-15. The doctrine of qualified immunity shields public officials from suit for conduct undertaken in the course of their duties if it "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity analysis involves a three step inquiry:

> First, we must determine whether plaintiff has alleged a violation of a constitutional right. Then, we must consider if the violated right was clearly established at the time of the conduct. Finally, if plaintiff had a clearly established, constitutionally protected right that was violated . . ., he or she must demonstrate that defendants' actions were not objectively reasonable.

*Harhay v. Town of Ellington Bd. of Educ.*, 323 F.3d 206, 211 (2d Cir. 2003) (citations omitted). As the Court has already discussed, Plaintiff has sufficiently alleged his medical indifference claim against Defendants Lipka, Nesmith, Karandy, and Maddocks. Furthermore, "the right to be free from deliberate indifference to serious medical needs" was clearly established at the time of the events

of this action.⁵ *See LaBounty v. Coughlin*, 137 F.3d 68, 74 (2d Cir. 1998) (citing *Estelle v. Gamble*, 429 U.S. at 104). Thus, Defendants' entitlement to qualified immunity turns on whether it was objectively reasonable for them to believe that their actions did not violate Plaintiff's constitutional rights. However, resolution of the objective reasonableness of Defendants' actions "depends on the determination of certain factual questions that cannot be answered at this stage of the litigation." *Denton v. McKee*, 332 F. Supp. 2d 659, 666 (S.D.N.Y. 2004).

Accordingly, the Court recommends that Defendants' Motion be **denied** as to Plaintiff's claims against Defendants Lipka, Nesmith, Karanady, and Maddocks.

### 2. Defendant Battu

The basis of Plaintiff's claim against Defendant Battu is that Battu violated Plaintiff's Eighth Amendment rights by ordering him to be discharged from the Mental Health Unit when Plaintiff was suffering from emotional distress and told Battu that he would commit suicide if returned to SHU. *See* Dkt. No. 1-1 at pp. 26-28.⁶

Defendants first argue that Plaintiff's allegations are insufficient to meet the objective prong because emotional and mental stress do not constitute a serious medical condition. Defs.' Mem. of Law at p. 9. Although generalized claims of stress may be insufficient to establish a serious medical

---

⁵ Defendants argue that it was neither clearly established that the conditions Plaintiff alleges he suffered from constituted a serious medical need, nor that the acts Defendants allegedly engaged in could constitute deliberate indifference. *See* Defs.' Mem. of Law at pp. 14-15. However, while the contours of the right "must be sufficiently clear that a reasonable official would understand that what he is doing violates that right[,] [t]his is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in light of pre-existing law the unlawfulness must be apparent.'" *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (citations omitted). The right Plaintiff is alleging was violated is his "right to be free from deliberate indifference to serious medical needs." *LaBounty v. Coughlin*, 137 F.3d at 74 (explaining that the district court took an overly "restricted view of the right" and "conflate[d] the specific conduct at issue with the defined right"); *see also Williams v. Greifinger*, 97 F.3d 699, 703 (2d Cir. 1996) ("A court need not have passed on the identical course of conduct in order for its illegality to be 'clearly established' . . . .").

⁶ Citation is to the pagination assigned by the Court's CM/ECF System.

condition, *see Blackson v. City of New York*, 2014 WL 6772256, at \*4 (S.D.N.Y. Dec. 2, 2014), Plaintiff alleges that he suffers from a number of mental disorders and that he reported feeling suicidal to Battu, *see* Compl. at ¶¶ 36, 84, & 114. Plaintiff further clams that he attempted suicide after Battu discharged him to SHU. Compl. at ¶ 146. District courts in this Circuit have recognized that "depression combined with severe anxiety attacks or suicide attempts is a serious medical need." *Young v. Choinski*, 15 F. Supp. 3d 172, 184 (D. Conn. 2014) (quoting *Zimmerman v. Burge*, 2009 WL 3111429, at \*8 (N.D.N.Y. Sept. 24, 2009)). Therefore, Plaintiff has adequately alleged that he suffered from a serious mental health need for the purposes of his Eighth Amendment claim against Defendant Battu.

Defendants also argue that Plaintiff's allegations are insufficient to establish that Defendant Battu acted with deliberate indifference towards Plaintiff's complaints of mental distress. Plaintiff, however, asserts that he repeatedly expressed suicidal thoughts to Defendant Battu, and that Battu disregarded Plaintiff's statements by discharging him from the Mental Health Unit. Shortly after being discharged from the Mental Health Unit, Plaintiff claims that he attempted suicide. Plaintiff's allegations suggest that Battu recklessly disregarded a substantial risk of harm to Plaintiff and are sufficient to satisfy the subjective prong of his Eighth Amendment claim.

Accordingly, the Court recommends that Defendants' Motion be **denied** as to Plaintiff's Eighth Amendment claim against Defendant Battu.[7]

### 3. *Defendant Renaud*

With respect to Defendant Renaud, Plaintiff alleges that on the evening of March 19, 2013,

---

[7] For the same reasons set forth above in connection with Plaintiff's claims against Defendants Lipka, Nesmith, Karandy, and Maddocks, the Court finds that Defendant Battu's entitlement to qualified immunity is not appropriately resolved at this stage of the proceedings.

he collapsed on account of not having received meals for seven straight days. Compl. at ¶ 98. Plaintiff states that his legs and arms were numb and that he felt lightheaded. *Id.* at ¶ 101. Plaintiff claims that Defendant Renaud saw him lying on the floor, and asked him what happened, but when Plaintiff requested medical assistance, Renaud refused to notify medical staff. *Id.* at ¶¶ 100 & 102. Plaintiff claims that he was lying on the floor of his cell all night with aches and pain, and unable to walk. *Id.* at ¶¶ 103 & 119.

"Non-medical prison personnel engage in deliberate indifference when they 'intentionally delayed access to medical care when the inmate was in extreme pain and has made his medical problem known to the attendant prison personnel.'" *Baumann v. Walsh*, 36 F. Supp. 2d 508, 512 (N.D.N.Y. 1999) (quoting *Hodge v. Coughlin*, 1994 WL 519902, at *11 (S.D.N.Y. Sept. 22, 1994)). For the purposes of his medical indifference claim against Defendant Renaud, however, Plaintiff has not alleged a sufficiently serious medical condition. Plaintiff claims that his legs "buckled," and that he felt "weak," "lightheaded," and "numb" in his arms and legs. Compl. at ¶¶ 98 & 101. None of these symptoms, which were due to not having eaten, suggest "a condition of urgency that may result in degeneration or extreme pain." *Chance v. Armstrong*, 143 F.3d at 702. Accordingly, the Court recommends that Defendants' Motion be **granted** as to Plaintiff's Eighth Amendment medical indifference claim against Defendant Renaud.

## IV. CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that Defendants' Motion to Dismiss (Dkt. No. 37) be **GRANTED** as to Plaintiff's Eighth Amendment medical indifference claim against Defendant C.O. Leon Renaud and **DENIED** in all other respects; and it is further

**ORDERED**, that the Clerk of the Court amend the caption of this case to reflect the correct spelling of Defendant "Haddocks" as Maddocks, Defendant "K. Rattu" as K. Battu, and Defendant "Fischer Nesmith" as Ted Nesmith; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14)[8] days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).

Date: August 24, 2017
       Albany, New York

_[signature]_
Daniel J. Stewart
U.S. Magistrate Judge

---

[8] If you are proceeding *pro se* and are served with this Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the order was mailed to you to serve and file objections. FED. R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. FED. R. CIV. P. 6(a)(1)(C).