**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

RENDELL ROBINSON,

                         Plaintiff,

         v.                                                9:16-CV-285
                                                              (DJS)

JAMES TAYLOR, *et al*,

                         Defendants.

**APPEARANCES:**                            **OF COUNSEL:**

RENDELL ROBINSON
Plaintiff, *Pro Se*
400 East 30th Street
New York, NY 10016

HON. LETITIA JAMES                    RYAN L. ABEL, ESQ.
New York State Attorney General       Assistant Attorney General
Attorney for Defendants
The Capitol
Albany, New York 12224

**DANIEL J. STEWART**
**United States Magistrate Judge**

## <u>MEMORANDUM-DECISION and ORDER</u>[1]

         Plaintiff, formerly an inmate in the custody of the New York State Department

of Corrections and Community Supervision ("DOCCS"), brings this *pro se* action

---

[1] The parties have consented, pursuant to 28 U.S.C. § 636(c), to have the undersigned handle all proceedings in this case. Dkt. No. 55.

pursuant to 42 U.S.C. § 1983, alleging that Defendants violated his rights while incarcerated at the Great Meadow Correctional Facility. Dkt. No. 1, Compl. Presently pending is Defendants' Motion for Partial Summary Judgment. Dkt. No. 82. Defendants additionally filed various medical records in support of the Motion. Dkt. Nos. 83 & 84. Plaintiff made several submissions in opposition to the Motion. Dkt. Nos. 96, 98, 101, & 103. Defendants filed a Reply Memorandum of Law. Dkt. No. 102. For the reasons which follow, Defendants' Motion is granted.

## I. LEGAL STANDARD FOR SUMMARY JUDGMENT

Pursuant to FED. R. CIV. P. 56(a), summary judgment is appropriate only where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the burden to demonstrate through "pleadings, depositions, answers to interrogatories, and admissions on file, together with [ ] affidavits, if any," that there is no genuine issue of material fact. *F.D.I.C. v. Giammettei*, 34 F.3d 51, 54 (2d Cir. 1994) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

To defeat a motion for summary judgment, the non-movant must set out specific facts showing that there is a genuine issue for trial and cannot rest merely on allegations or denials of the facts submitted by the movant. FED. R. CIV. P. 56(c); *see also Scott v. Coughlin*, 344 F.3d 282, 287 (2d Cir. 2003) ("Conclusory allegations or denials are ordinarily not sufficient to defeat a motion for summary judgment when the moving

2

party has set out a documentary case."); *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525-26 (2d Cir. 1994). To that end, sworn statements are "more than mere conclusory allegations subject to disregard . . . they are specific and detailed allegations of fact, made under penalty of perjury, and should be treated as evidence in deciding a summary judgment motion" and the credibility of such statements is better left to a trier of fact. *Scott v. Coughlin,* 344 F.3d at 289 (citing *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983) and *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995)).

When considering a motion for summary judgment, the court must resolve all ambiguities and draw all reasonable inferences in favor of the non-movant. *Nora Beverages, Inc. v. Perrier Group of Am., Inc.*, 164 F.3d 736, 742 (2d Cir. 1998). "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994). Furthermore, where a party is proceeding *pro se*, the court must "read [his or her] supporting papers liberally, and . . . interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994); *see also Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995). Nonetheless, summary judgment is appropriate "[w]here the record taken as a whole could not lead a

rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## II. FACTUAL BACKGROUND

The allegations in the Complaint, as relevant to this Motion, concern events in March 2013 at Great Meadow Correctional Facility where Plaintiff was then confined, Compl. at ¶ 25, and are outlined in summary form below. This factual recitation sets forth the general timeline and substance of the allegations at issue in the present Motion. The Court acknowledges that many particular facts related to these events are clearly disputed by the parties. The parties dispute, for example, who was present during certain medical appointments, whether Plaintiff cooperated during his medical examinations, whether Plaintiff made genuine threats of self-harm, whether Plaintiff actually attempted to commit suicide on March 20th or merely feigned that attempt, and whether other inmates refused to testify at Plaintiff's disciplinary hearing. *Compare generally* Dkt. No. 82-1, Defendants' Statement of Material Facts ("Defs.' 7.1 Statement") *with* Dkt. No. 96, Plaintiff's Response to Defendants' Statement of Material Facts ("Pl.'s' 7.1 Statement"). In addressing Defendants' arguments in favor of the Motion, the Court has, as it must, construed those factual disputes in the light most favorable to the Plaintiff. *Quaratino v. Tiffany & Co.*, 71 F.3d 58, 64 (2d Cir. 1995). For the reasons set forth in Part III of this Opinion, however, many of those factual disputes do not present disputes as to "material facts" which preclude summary judgment.

4

## *1. Plaintiff's Medical Claims*

On March 12th, Plaintiff was involved in a use of force incident with a number of correctional staff. *Id.* at ¶¶ 53-65.[2] Following that incident, Plaintiff was seen by Physician's Assistant Nesmith. Dkt. No. 82-3, Declaration of Fisher Nesmith ("Nesmith Decl."), ¶¶ 1-2. Nesmith's examination noted no apparent injuries and no need for treatment, although Plaintiff alleges that he was suffering pain and requested, but was denied, treatment for that pain. *Id.* at ¶ 3; Dkt. No. 96-1, Declaration of Rendell Robinson ("Robinson Decl."), ¶¶ 14-15.

Within Great Meadow Correctional Facility there is a Residential Crisis Treatment Program ("RCTP") for the treatment of inmates whose mental health condition necessitates special treatment. Dkt. No. 82-7, Declaration of Kalyana Battu ("Battu Decl."), ¶¶ 3-4. Observation cells within the RCTP are commonly referred to as the "OBS Unit." *Id.* at ¶ 3. Treatment staff in the RCTP are commonly mental health professionals employed by the New York State Office of Mental Health, not DOCCS. *See generally id.* After being seen by Nesmith, the decision was made to admit Plaintiff for observation in the RCTP rather than admit him to Great Meadow's Special Housing Unit ("SHU") because of potential threats of self-harm made by Plaintiff. *See id.* at ¶¶ 11-12. Over the course of the next several days Dr. Battu, who is a psychiatrist, and

---

[2] Defendants have not sought summary judgment as to the circumstances underlying that incident.

5

other OMH employees met with Plaintiff and evaluated his mental health. *Id.* at ¶¶ 1; 13-29.

On March 14th, Plaintiff was seen during sick call by Nurse Kimberly Lipka. Dkt. No. 82-4, Declaration of Kimberly Lipka ("Lipka Decl."), ¶ 2. Lipka maintains that she examined Plaintiff, who complained of ear pain, but noted no distress, no difficulty hearing, and no drainage from his ear. *Id.* at ¶¶ 3-4. Plaintiff contends that he requested medical treatment from Lipka, which was not provided. Compl. at ¶ 158. Later that day, Defendant Nesmith saw Plaintiff during emergency sick call. Nesmith Decl., at ¶ 8. At this time Plaintiff complained of eye, foot, and face pain, but Nesmith found no acute distress. *Id.* at 10; Declaration of Richard Lombardo ("Lombardo Decl."), Ex. A ("Pl.'s Dep.") at p. 209. Plaintiff requested x-rays, ice, and pain medication. *Id.* Nesmith did order that Plaintiff receive pain medication and that Plaintiff be admitted to the facility infirmary. Nesmith Decl. at ¶ 11. The following day, Dr. Raymond Maddocks saw Plaintiff in the infirmary. Dkt. No. 82-5, Declaration of Raymond Maddocks ("Maddocks Decl."), ¶¶ 2 & 4. Plaintiff complained of similar injuries and requested medication and that x-rays be done. Pl.'s Dep. at pp. 212-213. Maddocks observed no significant injuries and discharged Plaintiff from the infirmary. Maddocks Decl. at ¶¶ 4-5.

Between March 12th and March 20th, DOCCS and OMH staff had numerous interactions with Plaintiff assessing whether his mental health conditions required that

he remain in the RCTP or be admitted to SHU, which security staff had directed following the March 12th use of force incident. Battu Decl. at ¶¶ 10-29; Dkt. No. 84. On March 20th, Dr. Battu directed that Plaintiff be discharged from the RCTP. Battu Decl. at ¶ 26. Dr. David Karandy, the DOCCS Facility Health Services Director at Great Meadow, reviewed Plaintiff's medical records and cleared Plaintiff for admission to SHU. Dkt. No. 82-6, Declaration of David Karandy ("Karandy Decl.") at ¶¶ 1-4.

Shortly after being admitted to SHU Plaintiff claims he attempted suicide. Pl.'s Dep. at pp. 219-221; Compl. at ¶ 140. Plaintiff was brought back to the facility infirmary where he claims that Karandy and Lipka denied him proper medical treatment. Compl. at ¶¶ 142-151. Karandy contends that he observed no injuries upon examining Plaintiff. Karandy Decl. at ¶¶ 8 & 10.

### 2. Plaintiff's Conditions of Confinement Claim

The Complaint alleges that while housed in the OBS Unit, Plaintiff was denied food, showers, and access to mental health treatment over a period of approximately eight days. *See* Compl. at ¶¶ 79-80. Plaintiff claims that Defendants falsified the OBS logbook on those occasions when they denied him a meal or other services so that the logbook reflected that Plaintiff refused the meal, shower, or to see medical personnel. *Id.* During this time Corrections Officer Leon Renaud worked in the OBS Unit only four days. Dkt. No. 82-10, Declaration of Leon Renaud ("Renaud Decl."), ¶ 12. Each of those days, Defendant Renaud worked the 4 p.m. to midnight shift. *Id.* On those

7

days, all meals, showers, and mental health treatment was provided prior to Renaud coming on duty in the OBS Unit. *Id.* at ¶¶ 14-38. Also, during that time period, the OBS Unit logbook does not reflect that Plaintiff refused any service while Renaud was on duty. Lombardo Decl., Ex. K.

### 3. Plaintiff's Due Process Claim

On March 12th, Plaintiff was issued a misbehavior report by Sgt. James Taylor. Lombardo Decl. at Ex. L. That report charged Plaintiff with seven violations of facility rules regarding the event that led to the use of force on that date. *Id.* Plaintiff was served with a copy of the report and received assistance from an employee prior to a hearing held regarding the report. Lombardo Decl., Ex. P at p. 3. At the hearing, Plaintiff requested certain documentary material, some of which was provided to him, and some of which he was advised did not exist. *Id.* at pp. 16-17 & 33. Plaintiff requested the testimony of three inmate witnesses, all of whom the hearing officer was told refused to testify. *Id.* at p. 24. At the completion of the hearing, Plaintiff was found guilty of five of the charges lodged in the misbehavior report and not guilty of the remaining two charges. Lombardo Decl., Ex. Q at p. 2. Plaintiff was sentenced to disciplinary confinement in SHU where he served approximately 150 days confinement prior to the disciplinary determination being reversed. Dkt. No. 82-11, Declaration of Donald Venettozzi, ¶¶ 8-9.

## III. ANALYSIS OF DEFENDANTS' MOTION

Thirteen Defendants remain in this action following the Court's initial review of the Complaint under 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b).  Dkt. No. 7.  Seven of those Defendants, Nesmith, Lipka, Maddocks, Karandy, Battu, Renaud, and Quinn seek summary judgment here.  The allegations against Nesmith, Lipka, Maddocks, Karandy, and Battu are that they were deliberately indifferent to Plaintiff's medical needs in violation of the Eighth Amendment.  Plaintiff's claim against Defendant Renaud is also an Eighth Amendment claim, but relates to allegedly unlawful conditions of confinement.  Plaintiff alleges that Defendant Quinn denied him due process in violation of the Fourteenth Amendment in the manner through which Quinn conducted a disciplinary hearing involving charges against Plaintiff.

### A.  Medical Indifference Claims

To state an Eighth Amendment claim for denial of adequate medical care, a prisoner must demonstrate that prison officials acted with "deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). "[T]he plaintiff must allege conduct that is 'repugnant to the conscience of mankind' or 'incompatible with the evolving standards of decency that mark the progress of a maturing society.'" *Ross v. Kelly*, 784 F. Supp. 35, 44 (W.D.N.Y. 1992) (quoting *Estelle v. Gamble*, 429 U.S. at 102, 105-06). To state a claim for denial of medical care, a prisoner must demonstrate (1) a serious medical condition and (2) deliberate indifference. *Farmer v.*

*Brennan*, 511 U.S. 825, 834-35 (1994); *Hathaway v. Coughlin* ("*Hathaway I*"), 37 F.3d 63, 66 (2d Cir. 1994).

The first prong is an objective standard and considers whether the medical condition is "sufficiently serious." *Farmer v. Brennan*, 511 U.S. at 834 (quoting *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)). The Second Circuit has stated that a medical need is serious if it presents "a condition of urgency that may result in degeneration or extreme pain." *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (internal quotation marks and citation omitted). Among the relevant factors to consider are "[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Id.* (quoting *McGuckin v. Smith*, 974 F.2d 1050, 1059-60 (9th Cir. 1992)).

The second prong of the Eighth Amendment analysis is a subjective standard requiring a plaintiff to demonstrate that the defendant acted with the requisite culpable mental state similar to that of criminal recklessness. *Wilson v. Seiter*, 501 U.S. at 301-03; *Hathaway I*, 37 F.3d at 66. A plaintiff must demonstrate that the defendant acted with reckless disregard to a known substantial risk of harm. *Farmer v. Brennan*, 511 U.S. at 836. In order to rise to the level of deliberate indifference, the defendant must have known of and disregarded an excessive risk to the inmate's health or safety. *Wright v. Genovese*, 694 F. Supp. 2d 137, 154 (N.D.N.Y. 2010) (citing *Chance v. Armstrong*,

143 F.3d at 702). The defendant must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he or she must draw that inference. *Chance v. Armstrong*, 143 F.3d at 702 (quoting *Farmer v. Brennan*, 511 U.S. at 837).

### 1. Nesmith

Following a use of force incident at Great Meadow, Plaintiff was brought to the facility infirmary for an examination which was conducted by Defendant Nesmith. Nesmith Decl. at ¶ 2. Nesmith observed no visible injuries and no acute distress on the part of Plaintiff during this examination. *Id.* at ¶ 3. Accordingly, no treatment was provided. *Id.*; *see also* Dkt. No. 83 at pp. 3-6. Plaintiff claims that he suffered significant injuries during the use of force, including contusions and lacerations, and was suffering from pain. Pl.'s Decl. at ¶14. The Court has reviewed photographs and video taken of Plaintiff after the incident, Lombardo Decl., Exs. C & D; Dkt No. 103, and concludes that there are no readily visible injuries which could create questions of fact regarding Defendant Nesmith's recitation of Plaintiff's injuries. The videos also clearly establish that, contrary to his claims, Plaintiff had the opportunity to advise Nesmith of pain he was suffering but did not do so. Lombardo Decl., Ex. C. Nesmith examined Plaintiff and made a medical judgment regarding Plaintiff's condition and need for treatment. In doing so he was not indifferent to any serious medical need.

Nesmith saw Plaintiff again on March 14th at which time Plaintiff was complaining of head, ear, eye, face, neck, leg, and foot pain. Compl. at ¶ 158; Pl.'s Dep. at pp. 204-206. Plaintiff claims that Defendant failed to have x-rays taken to assess his condition. Compl. at ¶ 160; Pl.'s Dep. at p. 204. Nesmith's failure to order x-rays is no basis for relief as it is well established that "disagreements over medications, diagnostic techniques (*e.g.*, the need for X-rays), forms of treatment, or the need for specialists or the timing of their intervention, are not adequate grounds for a Section 1983 claim." *Sonds v. St. Barnabas Hosp. Corr. Health Servs.*, 151 F. Supp. 2d 303, 312 (S.D.N.Y. 2001); *see also Revels v. Corr. Med. Care, Inc.*, 2018 WL 1578157, at *4 (N.D.N.Y. Mar. 28, 2018) ("A mere disagreement with a prescribed course of treatment is not sufficient to establish a violation of the Eighth or Fourteenth Amendment."); *Washington v. Westchester Cty. Dep't of Corr.*, 2014 WL 1778410, at *6 (S.D.N.Y. Apr. 25, 2014) ("it is well-settled that the ultimate decision of whether or not to administer a treatment or medication is a medical judgment that, without more, does not amount to deliberate indifference.").

In addition, the record fails to support a claim of deliberate indifference given the treatment that was provided. Nesmith performed an examination of Plaintiff during which he observed no acute distress and normal vital signs. Nesmith Decl. at ¶ 10. Nesmith's nonetheless directed that Plaintiff be admitted to the facility hospital and prescribed Tylenol for his pain. *Id.* at ¶ 11; Lombardo Decl., Ex. B at p. 7. Such conduct

clearly did not demonstrate that the defendant acted with reckless disregard to a known substantial risk of harm, *Farmer v. Brennan*, 511 U.S. at 836, but instead was aware of Plaintiff's complaints and admitted him to the hospital for further observation by medical staff. Doing so was not deliberately indifferent to Plaintiff's needs.

Accordingly, Defendant Nesmith's Motion for Summary Judgment is granted.

## 2. Lipka

Plaintiff alleges that Nurse Lipka was deliberately indifferent to his medical needs on March 14, 2013. The record establishes that Plaintiff was seen by Defendant Lipka that day in his cell during sick call rounds. Plaintiff complained of ear pain. Lipka Decl. at ¶ 4. Nurse Lipka examined Plaintiff, found him to be in no acute distress with no difficulty hearing, and she noted no drainage from his ear. Dkt. No. 83 at p. 7. A serious medical need is "a condition of urgency that may result in degeneration or extreme pain." *Chance v. Armstrong*, 143 F.3d 698, 702. Plaintiff makes no allegation that his ear pain worsened with time or was causing him any other difficulty that would raise a question of fact regarding its seriousness. Plaintiff's alleged ear pain, especially in the absence of any difficulty hearing or other obvious sign of trauma to the ear, fails to establish a serious medical condition sufficient to establish an Eighth Amendment claim. *Chavis v. Chappius*, 2015 WL 1472117, at *17 (W.D.N.Y. Mar. 31, 2015); *Jones v. Furman*, 2007 WL 894218, at *10 (W.D.N.Y. Mar. 21, 2007) (noting that soreness,

small abrasions on the nose, and swelling and pain behind the right ear and back of the head are not serious medical conditions).

Plaintiff also claims that Nurse Lipka was present on March 20th when he was brought to the facility infirmary. Plaintiff claims that Lipka failed to provide Plaintiff with ice and pain medication on that occasion. Even if true, this factual allegation alone is insufficient to establish deliberate indifference. "While Plaintiff did not receive his desired treatment including being provided with an ice pack and receiving pain medication, 'it is well-settled that the ultimate decision of whether or not to administer a treatment or medication is a medical judgment that, without more, does not amount to deliberate indifference.'" *Crouch v. Spaulding*, 2019 WL 1004539, at *4 (N.D.N.Y. Jan. 24, 2019), *report and recommendation adopted*, 2019 WL 1004357 (N.D.N.Y. Mar. 1, 2019) (quoting *Washington v. Westchester Cty. Dep't of Corr.*, 2014 WL 1778410, at *6 (S.D.N.Y. Apr. 25, 2014)); *see also White v. Williams*, 2016 WL 1237712, at *12 (N.D.N.Y. Jan. 11, 2016), *report and recommendation adopted*, 2016 WL 1239263 (N.D.N.Y. Mar. 29, 2016) (claim that inmate should have been given ice pack and pain medication "amounts to a dispute over the appropriate treatment, and does not state an Eighth Amendment claim.").

For these reasons, Defendant Lipka's Motion for Summary Judgment is granted.

### 3. Maddocks

Plaintiff was seen in the facility infirmary on March 15, 2013 by Dr. Maddocks in relation to complaints of head, back, and neck pain after Plaintiff had been admitted to the infirmary the previous day by Nesmith. Maddocks Decl. at ¶ 2. Defendant reviewed Plaintiff's records, including notations that Plaintiff had been ambulating with no apparent difficulty, and examined Plaintiff and noted no apparent injury. *Id.* at ¶¶ 3-4. Maddocks, therefore, ordered Plaintiff discharged from the infirmary. *Id.* at ¶ 5. Plaintiff claims Maddox was indifferent to his medical needs because he failed to provide Plaintiff with ice and pain medication and also failed to order x-rays. Pl.'s Dep. at p. 212. As already discussed "disagreements over medications, diagnostic techniques (e.g., the need for X-rays), [and] forms of treatment . . . are not adequate grounds for a Section 1983 claim." *Sonds v. St. Barnabas Hosp. Corr. Health Servs.*, 151 F. Supp. 2d at 312. Given that Plaintiff's sole claim is that he requested particular treatment from Maddox that was not provided, he has failed to establish deliberate indifference. *Crouch v. Spaulding*, 2019 WL 1004539, at *4 (N.D.N.Y. Jan. 24, 2019), *report and recommendation adopted*, No. 2019 WL 1004357 (N.D.N.Y. Mar. 1, 2019); *Washington v. Westchester Cty. Dep't of Corr.*, 2014 WL 1778410, at *6.

Maddocks' Motion for Summary Judgment, therefore, is granted.

*4. Karandy*

Plaintiff alleges that on March 20, 2013 after being admitted to the Special Housing Unit he attempted suicide by trying to hang himself with torn bed sheets. Pl.'s Dep. at pp. 219-221. Plaintiff claims that Dr. Karandy was deliberately indifferent to his medical needs both in clearing Plaintiff for admission to SHU and then in failing to provide adequate treatment after the suicide attempt. *Id.* at pp. 219-224.

On March 20th, Plaintiff was housed in OBS, but had been cleared by OMH staff to be released to SHU. Karandy Decl. at ¶ 2. Plaintiff then needed to be cleared by DOCCS medical staff and Dr. Karandy, the Facility Health Services Director, undertook a review of Plaintiff's records. *Id.* at ¶¶ 2-3. In reviewing the records, Defendant found no evidence of significant or acute injury or ongoing medical problems that would preclude Plaintiff from being admitted to SHU and medically cleared him. *Id.* at ¶¶ 2-4. Plaintiff concedes that Dr. Karandy reviewed his records before clearing Plaintiff to be moved to SHU, but alleges that Defendant was aware of other medical facts that Plaintiff's claims should have precluded him from admission to SHU. Pl.'s 7.1 Statement at ¶ 10. Significantly, not included in the list of other relevant facts is any claim that Plaintiff was then suicidal. *Id.*; Compl. at ¶ 134. In making a decision about whether Plaintiff could be medically cleared for SHU admission, Dr. Karandy was clearly exercising medical judgment. "Issues of medical judgment cannot be the basis of a deliberate indifference claim where evidence of deliberate indifference is lacking."

16

*Hill v. Curcione*, 657 F.3d 116, 123 (2d Cir. 2011). Apart from apparently disagreeing with the determination, Plaintiff offers no evidence that rather than exercising his judgment Karandy knew Plaintiff was not medically able to go to SHU but chose to clear him anyway and so he cannot establish deliberate indifference. *Id.*

Shortly after his admission to SHU, Plaintiff was discovered by staff with torn bed sheets around his neck. He was transported from SHU to the infirmary at Great Meadow where he was seen by Dr. Karandy. Dr. Karandy examined Plaintiff and noted no apparent injuries, no cervical marks or deformities, and observed that Plaintiff could easily move his neck in multiple directions. Karandy Decl. at ¶¶ 8 & 10. Based on his examination, Dr. Karandy found that no further treatment was necessary, but referred Plaintiff back to the OBS Unit for further evaluation. Karandy Decl. at ¶ 10. Far from deliberate indifference, referring Plaintiff to the supervision of mental health staff following his alleged suicide attempt demonstrates that Defendant was not disregarding a known risk to Plaintiff's health and safety. *Atkins v. Cty. of Orange*, 372 F. Supp. 2d 377, 413 (S.D.N.Y. 2005) (no deliberate indifference when Plaintiff was referred to mental health housing unit after suicide attempt).

Dr. Karandy's Motion for Summary Judgment is granted.

### 5. *Battu*

Dr. Battu is employed by OMH, not DOCCS, as a psychiatrist. Battu Decl. at ¶ 1. He worked as part of a treatment team evaluating Plaintiff's mental health during

admissions to the OBS unit at Great Meadow between March 12 and March 25, 2013. *See generally* Battu Decl. Plaintiff alleges that Dr. Battu was deliberately indifferent to his medical needs during this time period because Plaintiff made multiple statements to Battu that if forced to return to SHU he would attempt suicide, but that Dr. Battu failed to provide appropriate treatment. Pl.'s Dep. at pp. 225-230.

The record establishes that Plaintiff spoke with Dr. Battu on multiple occasions.[3] They first met on March 13th and while Plaintiff suggested that he would try to kill himself on that date, Battu observed Plaintiff to have "no suicidal ideations, behaviors or plans; no acute warning signs or triggers; and no risk factors of suicide." Battu Decl. at ¶ 13. Dr. Battu concluded in his judgment that Plaintiff was not a harm to himself, but prescribed him medication and directed that he remain in the OBS Unit for continued observation. *Id.*

Defendant spoke with Plaintiff again the next day, again noting no suicidal ideations, behaviors or plans; no acute warning signs or triggers; and no risk factors of suicide. *Id.* at ¶ 15. Given his judgment that Plaintiff was not suicidal, Plaintiff was cleared for release from the OBS Unit. *Id.* Between March 14 and March 20, Plaintiff was regularly seen by DOCCS health facility and OMH Staff which ultimately resulted in Plaintiff's readmission to the OBS Unit. *Id.* at ¶¶ 16-25. Dr. Battu spoke again with Plaintiff on the morning of March 20th, the day after being brought back to the OBS

---

[3] Plaintiff and Dr. Battu spoke via video conference, apparently because Dr. Battu worked at Central New York Psychiatric Center not Great Meadow. *See* Battu Decl. at ¶¶ 2 & 13.

18

Unit.  *Id.* at ¶ 26.  Dr. Battu again concluded that, based on his medical judgment, Plaintiff did not pose a danger to himself and could be released from the OBS Unit.  *Id.*

Later in the day on March 20th, Plaintiff claims to have attempted suicide.  Compl. at ¶ 140.  The fact that Plaintiff attempted suicide after medical professionals had examined him and found him not to be a risk of harm to himself does not itself establish deliberate indifference.  *Sonberg v. Niagara Cty. Jail*, 2012 WL 5617539, at *9 (W.D.N.Y. Nov. 15, 2012).  The record establishes that medical providers attending to Plaintiff believed his threats of suicide were an attempt to manipulate staff to avoid being sent to SHU.  *See* Battu Decl. at ¶ 38.  In that regard this case is similar to *Sims v. Gorman* where mental health professionals named as defendants believed the plaintiff's threats of suicide "reflected attempts at manipulation rather than a true crisis."  2012 WL 566875, at *5 (W.D.N.Y. Feb. 21, 2012).  The Court there found no deliberate indifference despite an eventual suicide attempt by the plaintiff because the decisions made by mental health professionals "are issues within a professional medical judgment" which does not form a basis for an Eighth Amendment claim.  *Id.* (citing cases).  That Defendant Battu "might have ultimately been wrong in his professional judgment does not support a showing of deliberate indifference."  *Mercado v. City of New York*, 2011 WL 6057839, at * 5 (S.D.N.Y. Dec. 5, 2011).  Given the record in this case of Battu's actions, including initially continuing Plaintiff for observation in the

19

OBS Unit and prescribing him medication, Plaintiff fails to raise any triable question of fact that Defendant was acting out of indifference rather than in exercise of his judgment.

For these reasons, Defendant Battu's Motion for Summary Judgment is granted.

## B. Conditions of Confinement Claim

> Generally, to state a claim of inadequate prison conditions, a plaintiff must allege facts plausibly suggesting two things: (1) that the conditions of his confinement resulted in deprivation that was sufficiently serious such that the prisoner was denied the minimal civilized measure of life's necessities; and (2) that the defendant acted with deliberate indifference to the plaintiff's health or safety.

*Sharpe v. Taylor*, 2009 WL 1743987, at *11 (N.D.N.Y. June 18, 2009) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Trammell v. Keane*, 338 F.3d 155, 161 (2d Cir. 2003)). Plaintiff alleges that Defendant Renaud is liable under the Eighth Amendment because he denied Plaintiff meals, showers, and access to mental health treatment while Plaintiff was housed in the OBS unit in March 2013. Pl.'s Dep. at p. 178. While such claims potentially could give rise to an Eighth Amendment claim depending upon the circumstances, *see Butler v. Hogue*, 2010 WL 4025886, at *3 (N.D.N.Y. Oct. 13, 2010), the facts do no bear out Plaintiff's claims and as a result Defendant's Motion for Summary Judgment is granted.

During the time in question, Defendant Renaud worked in the OBS Unit on only four days, March 12, 13, 18, and 19, and always on the 4 p.m. to midnight shift. Renaud Decl. at 12; Defs.' 7.1 Statement at ¶ 17; Pl.'s 7.1 Statement at ¶ 17. Plaintiff claims that on these days, Renaud refused to provide Plaintiff with meals, showers, or access

to mental health treatment providers and that any notations in facility log books indicating instead that Plaintiff refused these meals or services are falsified. Pl.'s Dep. at pp. 183-184. A review of those facility logbook entries for the time in dispute, however, reveals that on the days that Defendant Renaud worked all meals, showers, and mental health treatment had already been provided before Renaud came to work. *See generally* Lombardo Decl., Ex. K. On each of these days, for example, dinner was served before Renaud went to work at 4 p.m. *Id.* at pp. 8 (dinner served at 2:45 p.m. on March 12); 13 (dinner served at 2:50 p.m. on March 13); 35 (dinner served at 2:38 p.m. on March 18); 40 (dinner served at 2:40 p.m. on March 19). Similarly, the records show that on March 13 and March 18 showers were provided to inmates in the morning, again before Renaud's shift began at 4 p.m. *Id.* at pp. 9 & 31.[4] Finally, on each of the days in question inmates were seen by mental health providers in the morning. *Id.* at pp. 3, 4, 9, 31, & 36.

While the OBS logbook reflects a number of times when Robinson allegedly refused meals or showers, there is no such reference when Renaud was working. Lombardo Decl., Ex. K. There is no entry that Robinson refused any direction of staff during the four shifts Renaud worked. *See id.* As a result, even accepting as true for purposes of the Motion Plaintiff's claim that the logbook was falsified, there is no evidence in the record that Renaud refused Plaintiff a meal, shower, or mental health

---

[4] These were the only days at issue when showers were provided.

services. Plaintiff has thus failed to establish Renaud's involvement in any alleged constitutional deprivation and summary judgment is appropriate. *See, e.g., McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir.1977) ("In this Circuit personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.").

## C. Due Process Claim

In the context of an inmate disciplinary proceeding, due process requires that the inmate be: (1) afforded advance written notice of the charges against him; (2) provided a written statement supporting the disposition and reasons for the disciplinary action taken; (3) permitted to call witnesses and present documentary evidence; (4) entitled to a fair and impartial hearing officer; and (5) found guilty only if the disposition is supported by at least "some evidence." *Wolff v. McDonnell*, 418 U.S. 539, 563–64 (1974); *Kalwasinski v. Morse*, 201 F.3d 103, 108 (2d Cir. 1999) (citing cases). Additionally, because Plaintiff was confined to a special housing unit prior to his disciplinary hearing, he was also entitled to an employee assistant. *Clark v. Gardner*, 256 F. Supp. 3d 154, 170 (N.D.N.Y. 2017). The record here establishes that all of these due process requirements were complied with in Plaintiff's case.[5]

---

[5] Defendant also contends summary judgment is appropriate based on Plaintiff's failure to establish that he had a protected liberty interest. *See Sandin v. Connor*, 515 U.S. 472 (1995). Plaintiff alleges that while confined in SHU he was forced to use stained linens and a dirty mattress with holes in it. Pl.'s Decl. at ¶ 56. Plaintiff also alleges that he was denied recreation, showers, and the ability to clean his cell on occasions. *Id.* at ¶ 64. For purposes of this Motion, these allegations are sufficient to establish questions of fact precluding summary judgment on this ground. *Welch v. Bartlett*, 196 F.3d 389, 393 (2d Cir. 1999) (finding questions of fact when SHU

As to some of these requirements, there is no dispute.  Plaintiff concedes that he received advance written notice of the charges.  Defs.' 7.1 Statement at ¶ 18; Pl.'s 7.1 Statement at ¶ 18.  There is also no dispute that Quinn provided Plaintiff with a copy of his written disposition of the charges.  Defs.' 7.1 Statement at ¶ 22; Pl.'s 7.1 Statement at ¶ 22.  Plaintiff also admits that he received assistance prior to the hearing.  Defs.' 7.1 Statement at ¶ 19; Pl.'s 7.1 Statement at ¶ 19.

### 1. Denial of Witnesses and Documentary Evidence

Plaintiff alleges that he was denied the testimony of three inmate witnesses. During the hearing Defendant Quinn discussed with Plaintiff the three inmates Plaintiff wished to have testify.  Quinn advised Plaintiff that each refused to testify.  The fact that "Plaintiff's witnesses refused to testify on his behalf does not alter the fact that the was given the opportunity to call witnesses." *Weaver v. Gutwein*, 2014 WL 906150, at *4 (N.D.N.Y. Mar. 7, 2014) (citing cases).  While it may be that under New York State regulations a hearing officer may be under an obligation to conduct a further inquiry regarding the refusal to testify in certain circumstances, *see*, *e.g.*, *Moore v. Goord*, 281 A.D.2d 736, 737 (3d Dep't 2001); Lombardo Decl., Ex. R, it is established that as a matter of federal due process "a hearing officer is under no obligation to 'make an independent evaluation of the basis for the refusal to testify.'" *Smith v. Prack*, 2015 WL 5512951, at *7 (N.D.N.Y. Sept. 14, 2015) (quoting *Greene v. Coughlin*, 1995 WL

---

inmate's allegations of atypicality include receiving inadequate amounts of soap and cleaning materials and having a filthy mattress).

60020, at *14 (S.D.N.Y. Feb. 10, 1995)) (citing cases); *see also Geraci v. Sticht*, 2017 WL 5501084, at *7 (W.D.N.Y. Nov. 16, 2017) ("courts in this Circuit have concluded that a hearing officer does not have to conduct an independent investigation before accepting an inmate-witness's refusal to testify.") (citing cases); *Jamison v. Fischer*, 2013 WL 5231457, at *3 (S.D.N.Y. July 11, 2013) ("an inmate has no constitutional claim simply because the hearing officer chooses not to inquire into a witness's reasons for refusing to testify"). Any error as a matter of state law in this regard, however, is not the basis for a federal constitutional claim against Quinn. *Caimite v. Venettozzi*, 2018 WL 6069458, at *5 (N.D.N.Y. Oct. 29, 2018), *report and recommendation adopted*, 2018 WL 6068414 (N.D.N.Y. Nov. 20, 2018) ("a violation of DOCCS procedures or state procedural rules regarding disciplinary hearings do not, alone, demonstrate a federal due process claim under § 1983").

Plaintiff also claims that he was denied certain documentary evidence at the hearing, but the record does not support this allegation. Plaintiff requested an unusual incident report and video footage from his housing unit, both of which Quinn advised Plaintiff did not exist. Lombardo Decl., Ex. P at pp. 16-17 & 33; Pl.'s Dep. at p. 141. Plaintiff has not disputed that these documents do not exist and under well-established law "where the requested documents are found to be nonexistent, the inmate suffers no constitutional deprivation." *Mohamed v. Phelix*, 2017 WL 4326660, at *12 (N.D.N.Y. June 13, 2017), *report and recommendation adopted*, 2017 WL 4326520 (N.D.N.Y.

24

Sept. 28, 2017) (citing *Mays v. Mahoney*, 1994 WL 48831, at * 7 (S.D.N.Y. Feb. 14, 1994)). Plaintiff did request photographs which were provided at the hearing. Pl.'s Dep. at p. 140. This record establishes that Plaintiff was not denied any documentary evidence at his disciplinary hearing.

## 2. Alleged Bias on the Part of the Hearing Officer

Plaintiff also claims that Quinn was not impartial in conducting the hearing. Plaintiff's claim of bias is largely conclusory. He contends that Quinn allowed Sergeant Taylor, the author of the misbehavior report against Plaintiff, to testify falsely. Pl.'s Dep. at pp. 130-31. He also contends that Quinn made certain off the record comments that he had to find Plaintiff guilty or certain unnamed individuals were "going to get on me." *Id.* at p. 133.

"An impartial hearing officer is one who 'does not prejudge the evidence' or an inmate's guilt." *Sowell v. Bullis*, 2016 WL 1696454, at *13 (N.D.N.Y. Mar. 25, 2016), *report and recommendation adopted*, 2016 WL 1700410 (N.D.N.Y. Apr. 27, 2016); *see also Allah-Kasiem v. Sidorowicz*, 2012 WL 2912930, at *11 (S.D.N.Y. July 17, 2012). Plaintiff's only claim that Quinn prejudged the matter relates to his alleged off the record statement that he had to find Plaintiff guilty. "Plaintiff's unsupported assertion is the only evidence of this statement. Where claims of bias are based on purely conclusory allegations, 'they are routinely dismissed.'" *Williams v. Chuttey*, 2017 WL 9673722, at *11 (N.D.N.Y. Sept. 5, 2017), *report and recommendation adopted*, 2018 WL 1413049

25

(N.D.N.Y. Mar. 21, 2018) (quoting *McAllister v. Call*, 2014 WL 5475293, at *12 (N.D.N.Y. Oct. 29, 2014)); *see also Brown v. Dubois*, 2017 WL 9511165, at *3 (N.D.N.Y. Feb. 28, 2017), *report and recommendation adopted*, 2017 WL 1102746 (N.D.N.Y. Mar. 24, 2017) ("Claims of hearing officer bias are common in § 1983 cases by inmate plaintiffs, and where they are based on purely conclusory allegations, they are routinely dismissed."); *Lopez v. Whitmore*, 2015 WL 4394604, at *11 (N.D.N.Y. July 16, 2015) ("An inmate's own subjective belief that the hearing officer was biased is insufficient to create a genuine issue of material fact.").

The conduct of the hearing also suggests that Quinn was not biased against Plaintiff. Plaintiff requested to see photographs taken after the use of force which Quinn allowed Plaintiff to have access to despite finding that they were not relevant to the charges lodged against Plaintiff. Lombardo Decl., Ex. P at p. 33. More significantly, the record establishes that Plaintiff was charged with seven facility rule violations and found guilty of five and not guilty of two. Lombardo Decl., Ex. Q at p. 2. That Quinn found Plaintiff not guilty of two of the charges lodged against him is perhaps the "most important[]" evidence suggesting a lack of bias. *Allah-Kasiem v. Sidorowicz*, 2012 WL 2912930, at *11.

### 3. Sufficiency of the Evidence

Plaintiff does not specifically challenge the sufficiency of the evidence relied upon by Quinn to support his determination, apart from his claim that Taylor testified falsely at the hearing.

"The Supreme Court has clarified that judicial review of the written findings required by due process is limited to determining whether the disposition is supported by some evidence." *McDonald v. Zerniak*, 2016 WL 6581289, at *5 (N.D.N.Y. Nov. 4, 2016) (internal quotation omitted). This requires the Court to determine "whether there was reliable evidence of the inmate's guilt." *Luna v. Pico*, 356 F.3d 481, 488 (2d Cir. 2004). The record establishes that Quinn relied principally on the misbehavior report and Taylor's testimony, which Quinn found to be credible. Lombardo Decl., Ex Q at p. 4. "As the hearing officer, Defendant [Quinn] was authorized to make credibility determinations." *Lopez v. Whitmore*, 2015 WL 4394604, at *11; *see also Neree v. O'Hara*, 2011 WL 3841551, at *19 (N.D.N.Y. July 20, 2011), *report and recommendation adopted*, 2011 WL 3841553 (N.D.N.Y. Aug. 29, 2011) (noting discretion afforded to hearing officers). The "some evidence" standard is satisfied when hearing testimony was consistent with the written misbehavior report. *See Hinton v. Prack*, 2014 WL 4627120, at *15 (N.D.N.Y. Sept. 11, 2014) (citation omitted) ("some evidence" standard satisfied where the misbehavior report was made by the officer personally involved in the incident and was based upon his first hand observation and

detailed account of the incident); *Kotler v. Daby*, 2013 WL 1294282, at *10 (N.D.N.Y. Mar. 28, 2013) (same); *Creech v. Schoellkoph*, 688 F. Supp. 2d 205, 214 (W.D.N.Y. 2010) (same).

For these reasons, Defendant Quinn's Motion for Summary Judgment is granted.

## IV. CONCLUSION

For the reasons stated herein, it is hereby

**ORDERED**, that Defendants' Motion for Summary Judgment (Dkt. No. 82) be **GRANTED**; and it is further

**ORDERED**, that the following Defendants are Dismissed from this action: Nesmith, Lipka, Maddocks, Karandy, Battu, Renaud, and Quinn; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Memorandum Decision and Order upon the parties to this action.

Date:  March 29, 2019
       Albany, New York

Daniel J. Stewart
U.S. Magistrate Judge